IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV - 7 2017

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

| | | |
|---|---|---|
| LATEASHA STUDYVENT, | ) | **COMPLAINT** |
| Plaintiff, | ) | |
| v. | ) | **DOCKET NO.:** |
| | ) | **1:17-CV-2161-LMM** |
| RENAL LIFE LINK, INC., | ) | **PLAINTIFF DEMANDS** |
| | ) | **TRIAL BY JURY** |
| Defendant. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Comes now Plaintiff, LATEASHA STUDYVENT ("Plaintiff"), and brings this action against Defendant RENAL LIFE LINK, INC. (hereinafter "Defendant"), and alleges as follows:

## PARTIES

I.

Plaintiff is a citizen and resident of Texas and the United States.

2.

Defendant RENAL LIFE LINK, INC. is a corporation incorporated in Georgia, and according to its website, one of the world's most diverse renal medical and diagnostics services company, with its principal place of business located at JLD/SECGOVFIN, 2000 16th Street, Denver, Colorado, 80202 and may

be served through its registered agent Corporation Service Company, 40

Technology Parkway, Suite #300, Norcross, Gwinnett County, Georgia 30092.

## VENUE AND JURISDICTION

3.

This court has original jurisdiction over this action under 28 U.S.C.§ 1332,

in that the amount of the controversy exceeds seventy-five thousand dollars

($75,000.00) and Plaintiff is a citizen of a state which is different from the state

where the Defendants have their place of business.

Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because

defendant resides or is located in this judicial district and defendant's tortious

conduct giving rise to plaintiff's claims occurred in this judicial district.

4.

Venue is proper in this district, because the accident occurred in Lithia

Springs, Georgia in the county of Douglas which falls within the jurisdiction of

this Court. Further, our potential witnesses are likely to be located in Lithia

Springs, Georgia.

## FACTUAL ALLEGATIONS

5.

RRENAL LIFE, INC. is a subsidiary of DAVITA and according to its

website it is one of the country's largest providers of dialysis treatment with nearly

1,000 clinics nationwide. For the fiscal year ending December 31, 2016 Davita had earnings of approximately $739 million and ranks 200 on the Fortune 500 list of the world's largest companies by revenue.

6.

RENAL LIFE LINK, INC. employs a staff of nurses, doctors and dialysis technicians within its facilities across the country.

### NURSE JANE DOE

7.

On October 19, 2015, Jane Doe was employed by RENAL LIFE LINK, INC. as a Nurse.

### DR. NEGA WOLDEHAWARIAT

8.

On October 19, 2015, Dr. Nega Woldehawariat was employed by RENAL LIFE LINK, INC. as a Physician.

9.

Dr. Woldehawariat and Jane Doe's jobs were based out of the Sweetwater clinic that is Owned and operated by RENAL LIFE LINK, INC. based out of Lithia Springs, Georgia.

10.

Upon information and belief, on the evening of October 19, 2015, Jane Doe commuted from her home to the Sweetwater facility in Lithia Springs, Georgia to commence her shift.

11.

Upon information and belief, on the evening of October 19, 2015, Dr. Woldehawariat commuted from his home or office to the Sweetwater facility in Lithia Springs, Georgia to commence his shift.

12.

Upon information and belief, Jane Doe began her shift at the Sweetwater facility on October 19, 2015, at approximately 3:00 p.m.

13.

Upon information and belief, Jane Doe's duties upon commencement of her shift included, but were not limited to administering and making various doses of medications to dialysis patients.

14.

Upon information and belief Dr.  Woldehawariat began her shift at the Sweetwater facility on October 19, 2015, at approximately 4:00 p.m.

15.

Upon information and belief, Dr. Woldehawariat's duties upon commencement of his shift included, but were not limited to consulting with dialysis patients and administering and making various doses of medications to dialysis patients.

## LATEASHA STUDYVENT

16.

On the evening of October 19, 2015, Ms. Studyvent arrived at the Sweetwater facility in Lithia Springs, Georgia for her usual dialysis treatment.

17.

At the conclusion of her dialysis treatment, Jane Doe administered a lethal overdose of iron sucrose into Plaintiff's intravenous line at the direction of Dr. Woldehawariat.

## THE INCIDENT

18.

Jane Doe approached plaintiff and kept repeating that she administered the amount of medication that the doctor ordered and that she repeatedly asked him if the dosage was correct because she thought that it was an incorrect dosage.

19.

Jane Doe administered the dosage of medication despite her own misgivings.

20.

At approximately twenty minutes later, plaintiff's daughter who had arrived to pick plaintiff up and demanded to be brought back to the treatment area when plaintiff was not in the waiting area when she arrived to pick her up.

21.

When plaintiff's daughter saw the conditions of her mother in the treatment area and she demanded an ambulance be called.

22.

Plaintiff was transported from the facility to the hospital.

23.

Upon arrival at the emergency room, plaintiff was treated and her injuries were characterized by the emergency room physicians as "life-threatening".

## COUNT I-NEGLIGENCE

24.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

25.

On or about October 15, 2015, Plaintiff, Lateasha Studyvent was a patient at the Sweetwater dialysis facility located in Lithia Springs, Georgia, owned and operated by RENAL LIFE LINK, INC.

26.

On or about October 19, 2015, Jane Doe was working at the Sweetwater clinic that is owned and operated by RENAL LIFE LINK, INC.

27.

On or about October 19, 2015, Dr. Woldehawariat was working at the Sweetwater clinic that is owned and operated by RENAL LIFE LINK, INC.

28.

RENAL LIFE LINK, INC. was careless and negligent in the ownership and operation of its employees and/or agents and the operation of its clinic which caused Ms. Studyvent to suffer severe personal injuries.

29.

As a direct and proximate result of said incident, Ms. Studyvent was caused to sustain several painful bodily injuries, including but not limited to ongoing gastrointestinal issues which required hospitalization and multiple surgical procedures, extensive medical treatment, and will require significant ongoing medical supervision.

30.

As a direct and proximate result of said physical injuries sustained by Ms. Studyvent in the incident, she has been incapacitated from pursuing her usual employment and other activities, may be left with disabilities that will in the future

similarly incapacitate her and cause her pain and suffering, and may require ongoing medical treatment.

## COUNT II-RENAL LIFE LINK, INC.'S
## RECKLESS OR INTENTIONAL CONDUCT

### 31.

RENAL LIFE LINK, INC. knew or should have known that Jane Doe was not adequately or properly trained to administer medication. The defendant did not exercise the degree of care that an ordinary prudent person under similar circumstances would have. Ms. Studyvent is entitled to recover damages for the serious and life altering injuries she has suffered and will continue to suffer for the remainder of her life as a result of defendant's breaches and negligence.

### 32.

As a result of Jane Doe and Dr. Woldehawariat's incompetence, Jane Doe administered a lethal dosage of iron sucrose at Dr. Woldehawariat's direction causing life-threatening injuries.

### 33.

Further, RENAL LIFE LINK, INC. is a state of the art facility that is equipped with protocols in place designed to protect patients from just this occurrences.

34.

However, Jane Doe made the decision to administer what she knew was a lethal amount of medication to Ms. Studyvent. RENAL LIFE LINK, INC. knew or should have known that it nursing staff was not sufficiently trained on the administration of medication.

35.

Had Jane Doe's training been adequate, the subject incident could have been involved.

36.

Defendant knew its actions were substantially certain to result in serious injury or death because administering medication, by its nature, is a dangerous activity, and RENAL LIFE LINK, INC. heightened this danger through its activities.

37.

Upon information and belief RENAL LIFE LINK, INC. recklessly and intentionally engaged in a pattern and practice of having its nurses and doctors violating the Georgia Department of Health's Rules and Regulations, its governing body.

38.

Upon information and belief RENAL LIFE LINK, INC. knew or should have known its nurses were routinely administering medications incorrectly and in a way not permitted under the Georgia Department of Health's regulations.

39.

RENAL LIFE LINK, INC. not only failed to condemn, but condoned this practice of nurses routinely violating Georgia Department of Health regulations.

40.

RENAL LIFE LINK, INC. knew or should have known that its nurses and doctors were putting patients of its clinics in danger.

41.

Even of RENAL LIFE LINK , INC.'S nurses and doctors were marginally complying with the regulations set forth under the Georgia Department of Health's regulations, the judgment in knowing that the medications the nurses are told to administer by the physician are improper, the nurse on duty on the night of October 15, 2015,  administered the lethal dosage anyway to the detriment and near death of Ms. Studyvent.

42.

RENAL LIFE LINK, INC. has a custom and practice of recklessly and intentionally allowing its nurses to administer improper doses of medications to its patients.

43.

Upon information and belief, RENAL LIFE LINK, INC. recklessly and intentionally failed to take proper measures to combat the serious danger of its nurses improperly administering medication to its patients.

44.

As a direct, substantial and proximate result of reckless or intentional conduct of RENAL LIFE LINK, INC., as set forth above, Plaintiff suffered serious injuries and damages.

## COUNT III NEGLIGENCE PER SE

45.

Reincorporating paragraph 28, upon Ms. Studyvent's complaints of pain, an ambulance should have immediately been called by defendants. Instead, plaintiff's daughter had to insist that the staff call an ambulance causing further injuries sustained by plaintiff. This constitutes negligence per se by failing to obtain informed consent pursuant to O.C.G.A. § 31-9-6.01.

## COUNT IV-STANDARD OF CARE

46.

The standard of care is the care and treatment that reasonably prudent professional providers of services would perform in like situations and in similar circumstances. Defendant, in connection with the administration of medication, breached the standard of care by: a. Failing to use the proper dosage of medication; b. Using the wrong settings on syringe; c. Failing to account for the patient's immediate reaction to the administered medication; d. Failing to properly supervise a licensed registered nurse; e. Failing to call an ambulance upon the complaint of pain further inflicting additional pain and permanent damage; and f. Failing to properly render full medical attention upon discovering the severe symptoms to Ms. Studyvent's body. Defendant's breaches of the standard of care injured Ms. Studyvent.

## COUNT V FAILURE TO OBTAIN INFORMED CONSENT

47.

Defendant's breaches of the standard of care have had a profound negative impact upon Ms. Studyvent's life and will continue to do so for the remainder of her life. Ms. Studyvent's serious and life altering injuries caused by defendant's breaches of the standard care were reasonably foreseeable. Had Ms. Studyvent

been provided informed consent and educated about the known risks of intravenously administered iron sucrose, she would have had the opportunity to decline the medication. Intravenous iron sucrose was administered to Ms. Studyvent's intravenous line and pursuant to O.C.G.A. § 31-9-6.01, the obligation to provide informed consent was mandatory.

## COUNT VI BREACH OF CONTRACT

48.

Ms. Studyvent's Medicare insurance paid good consideration for her dialysis procedure to be performed is assured that each time the procedure is performed it would improve her life expectancy. Instead, her bargain resulted in permanent injuries thereby resulting in a breach of contract claim.

49.

Although not required pursuant to Fed. R. Civ. P. 8(a); *Baird v. Celis*, 41 F. Supp. 1358 (N.D. Ga. 1999); *Zurich Am. Ins. Co. v. Scheffer Engineering Co.*, 201 WL 344095 at *4 (N.D. Ga. 2011); *Robinson v. Correctional Medical Associates, Inc.*, WL 2499994 at *4 (N.D. Ga. 2010; *Larson v. Grayer*, 2009 WL 4281100 at *1 (N.D. Ga. 2009); *Stidman v. United States*, Civ. A 1:13-CV-1093-TWT (N.D. Ga. 2014); for notice purposes and in compliance with O.C.G.A. § 9-11-9.1 's requirement for a professional affidavit to be filed in support of a professional

negligence claim, Ms. Studyvent files the affidavit of Akash R. Amin, M.D. as Exhibit A to this amended complaint.

## COUNT VII FRAUD AND MISREPRESENTATION

50.

In order to encourage litigants to act in good faith, the Federal Rules of Civil Procedure specifically require parties to affirmatively disclose all relevant information without the necessity of court orders compelling disclosure. *Malautea v. Suzuki Motor Company, Ltd.* 987 F.2d 1536 (11th Cir. 1993); *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 799 F.2d 1510, 1521-23 (11th Cir.1986). These rules are designed to ensure that the ultimate resolution of disputed issues is based on a full and accurate understanding of the facts. *United States v. The Procter & Gamble Company,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077; *Hickman v. Taylor*, 329 U.S. 495, 500-01, 67 S.Ct. 385, 388-89, 91 L. Ed. 451 (1947). Defense counsel violated her oath as an officer of the court by intentionally withholding the correctly-named Defendant's information in the State action which leads Plaintiff to believe that she has no boundaries when it comes to litigating this matter. Plaintiff has every reason to believe that defense counsel knew the identity of the correctly-named Defendant and deliberately concealed it in the State action. "Courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal." *Kleiner v. First Nat'l Bank of Atlanta,*

751 F.2d 1193, 1209 (11th Cir. 1985) (citing *Roadway Express, Inc. v. Piper*,

U.S. 752, 764-65 (1980)). This power "'necessarily includes the authority to

impose reasonable and appropriate sanctions upon errant lawyers practicing before

it.'" Id. (quoting *Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885, 888 (5th

Cir. 1968)). "Such sanctions include . . . disqualification of counsel[.]" *Id*. "A trial

judge possesses the inherent power to discipline counsel for misconduct, short of

behavior giving rise to disbarment or criminal censure, without resort to the powers

of civil or criminal contempt." *Id*. "The standards governing disqualification of an

attorney already admitted to appear before the district court differ, depending on

the circumstances." *Schlumberger Techs. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir.

1997). Schlumberger Technologies espoused two standards. First, "[i]f the conduct

at issue threatens disruption of the court proceedings, or is a deliberate challenge to

the authority of the district court, . . . great deference [is given] to the trial court's

decision to disqualify the responsible attorney." *Id*. (citing as examples *United

States v. Dinitz*, 538 F.2d 1214, 1220-21 (5th Cir. 1976), and *Kleiner*, 751 F.2d at

1207). A later Eleventh Circuit case described this standard as applying to

"conduct 2 Case 2:07-cv-00135-WKW-TFM Document 152 Filed 06/01/2009

Page 2 of 20 disruptive of the proceedings or constituting a threat to the orderly

administration of laws," or, more succinctly, said the standard applied to "the

'orderly administration of justice' line of cases." In re *BellSouth Corp.*, 334 F.3d

*Cir. 1985) (citing Broadway Express, Inc. v. Piper,* 44/

941, 959 (11th Cir. 2003) (citation omitted). Second, "[i]f . . . the conduct at issue does not threaten the orderly administration of justice but is allegedly unethical, . . . district courts [must] rest their disqualification decision on the violation of specific Rules of Professional Conduct, not on some 'transcendental code of conduct . . . that . . . exist[s] only in the subjective opinion of the court.'" *Schlumberger Techs.*, 113 F.3d at 1561. In addition, the Eleventh Circuit in *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306 (11th Cir. 2002), held that "before a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct 'constituted or was tantamount to bad faith.'" *Id.* at 1320 (quoting *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 918 (11th Cir. 1982)); but see *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 (11th Cir. 2005) (recognizing, but not resolving, the lack of clarity in Eleventh Circuit cases as to whether those cases require "subjective bad faith, which may be inferred from reckless conduct, or [whether] they merely require reckless conduct, which is considered "tantamount to bad faith" (brackets added)). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues[even] a meritorious claim for the purpose of harassing an opponent." *Thomas*, 293 F.3d at 1320. As the Eleventh Circuit has held, "[A]n attorney who submits documents to the district court that contain ad hominem attacks 3 Case 2:07-cv-00135-WKW-TFM Document 152 Filed 06/01/2009 Page 3 of 20 directed

at opposing counsel is subject to sanction under the court's inherent power to oversee attorneys practicing before it." *Id.* at 1308; see also id. at 1326 n.29. Submissions to the court "are not meant to be an avenue through which attorneys, clients, and witnesses can simply emote, let off steam, or otherwise sling mud at an adversary." *Id.* at 1325. Bad faith also is demonstrated by conduct that "hampers enforcement of a court order." *Id.* In such an instance, "disqualification [is] justified by the 'strong . . . interest in securing obedience to mandates of the court which is necessary to secure the orderly administration of the laws." *Schlumberger Techs.*, 113 F.3d at 1560 n.7 (quoting *Kleiner*, 751 F.2d at 1210).

## DEMAND FOR JURY TRIAL

51.

Plaintiff hereby demands a jury trial as to all issues so triable as a matter of right, pursuant to F.C.R.P. 38(b)(1) and 38(c).

## PRAYER FOR RELIEF

52.

WHEREFORE, plaintiff prays that defendant, RENAL LIFE LINK, INC. be served with a copy of this Complaint, and that, after due proceedings:

1. There be judgment herein in favor of the plaintiff and against defendant for all compensatory and statutory damages together with legal interest thereon

from the date of injury until paid, and all costs and expenses of these proceedings

declaring that the defendant is liable for all applicable damages and thereafter;

2. There be specially included in the judgment in the plaintiff's favor,

provisions for the following damages and relief as found applicable and supported

by the evidence:

a. Past and future mental and physical pain and suffering by Ms. Studyvent;

b. Past and future loss of enjoyment and quality of life of Ms. Studyvent:

c. Past and future compensable medical and other out-of-pocket expenses

related to defendant's wrongdoing;

d. Punitive damages as allowed by law;

e. Injunctive relief;

e. Costs of court; and

3. All other general, equitable, and further relief as the Court may deem just and

proper. Ms. Studyvent demands a jury trial on her claims.

**[SIGNATURES ON NEXT PAGE]**

Respectfully submitted,

_____

LATEASHA STUDYVENT
*PRO SE*
3329 W. Wadley Avenue, Apt. 64
Midland, TX 79707
(404) 966-6280
lstudyvent@gmail.com

**PLEASE SERVE:**

RENAL LIFE LINK, INC. Through their agent for service of process,
Corporation Service Company
40 Technology Parkway, Suite #300
Gwinnett, Norcross, Georgia 30092